## MAY COAL & GRAIN CO. v. KANSAS CITY, MO.
### No. 2055.

District Court, W. D. Missouri, W. D.
April 18, 1935.

Frank Schibsby and George Reinhardt, both of Kansas City, for plaintiff.

George Kingsley, City Counselor, and J. C. Petherbridge, Asst. City Counselor, for defendant.

REEVES, District Judge.

In this case plaintiff's bill challenges the constitutional validity of Ordinance No. 3047 of the city of Kansas City. This ordinance in substance requires that all retail coal dealers in the city of Kansas City shall be domiciled therein, that is to say, they shall "possess and own proper equipment for the operation of such retail business within the limits of the city; such equipment shall consist of a coal yard or station with reasonable facilities therefor, an office and a wagon scale of at least five-ton capacity."

Plaintiff is the owner of a coalyard at Dodson, "some one-half mile south of defendant city," and it is engaged, among other things, in retailing and delivering coal within the corporate limits of the city.

The said ordinance contains other provisions for appropriate regulation of the busi-

ness of retail coal dealers in order to protect the public against deception either in the weight of the coal or in the kind and character or classification thereof.

The bill charges an impingement upon the "due process" clause of the Constitution of the United States, and denial of equal protection of the law, and an abridgment of the privileges or immunities of citizens (Const. Amend. 14, § 1).

The defendant city asserts the validity of said ordinance and the power of the city to regulate the sale of coal by retail within the city, and the necessity of the domiciliary provisions of said ordinance to protect the citizens of said city against imposition.

The testimony in the case showed that the ordinance was enforced against plaintiff by the arrest of its drivers, but that other coal dealers similarly situated were permitted to transact business within the city without molestation, although they too had not complied with the provisions of the ordinance. Moreover, it was made to appear that the city was prepared reasonably to inspect the coal retailed by the plaintiff, both at its yards outside the city and within the corporate limits of the city. The evidence showed conclusively that this could be done just as easily and with the same convenience to the city as if the plaintiff had an established place within the corporate limits of the city. It was further made to appear that the penalties of the ordinance were being invoked on behalf of coal dealers operating from established yards within the city. The plaintiff has offered to comply with any reasonable ordinance regulation pertaining to coal dealers having yards outside the corporate limits of the city.

1. Heretofore this case was dismissed upon the sole ground that the plaintiff had established a yard within the city, and that therefore it was estopped to challenge the validity of the ordinance.

Upon appeal, the Court of Appeals reversed the case upon the ground that this question was not presented by the pleadings. The same question is again urged here by answer duly filed.

■ At the outset, this contention of the city should be ruled against it, for the reason that it appears that the plaintiff has abandoned its yard within the city. Furthermore, the coalyard at Dodson was accessible to parts of the city not readily served by the yard formerly established and maintained by the plaintiff at Waldo, within the cor-

porate limits of the city. It should be held, moreover, that the establishment of a yard within the city and a compliance with the regulations of the city pertaining to inside coal dealers would not be a waiver of a right on the part of the plaintiff to supply coal from an outside yard upon compliance with reasonable regulations and licensing laws.

2. In reversing the case on appeal (May Coal & Grain Co. v. Kansas City, 73 F.(2d) 345, 348), the Court of Appeals was of the opinion that this court had jurisdiction, for the reason that the bill stated a cause of action under the Fourteenth Amendment to the Constitution of the United States.

In ruling the case, the court cited the case of Binderup v. Pathé, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308, and quoted from said opinion in part as follows: "Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact."

■ Under the ruling of the Court of Appeals, the bill therefore states both law and fact. This is essential to confer jurisdiction upon the court. The plaintiff, by its evidence, fully supported its allegation of facts, and therefore quite convincingly proved the case which the Court of Appeals said it had stated in its bill.

Under the authority, therefore, of the appellate court, in this case the plaintiff would be entitled to the relief it seeks.

■ 3. There can be no question about the right of a city, such as the defendant in this case, to provide reasonable regulations for retailers of coal and other products within the city, and particularly is this true in respect of weights and measures and the character of coal distributed to consumers. Sylvester Coal Co. v. City of St. Louis, 130 Mo. 323, 32 S. W. 649, 51 Am. St. Rep. 566; 19 R. C. L. § 165, p. 863; McLean v. Arkansas, 211 U. S. 539, 29 S. Ct. 206, 53 L. Ed. 315.

■ In this connection great latitude must be allowed in the exercise of the police power, as well as the taxing power of the city, and particularly in respect of the necessity for regulation, classification, and the like, and the courts must of necessity have reluctance in declaring unconstitutional any of the enactments of the law-making body of the state or of any of its agencies and subdivisions. San Francisco Shopping News Co. v. City of South San Francisco (C. C. A.) 69 F.(2d) 879.

Regulations are upheld unless "so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law." Schmidinger v. Chicago, 226 U. S. 578, 33 S. Ct. 182, 184, 57 L. Ed. 364, Ann. Cas. 1914B, 284. And "the test of the constitutionality of the ordinance is whether the ordinance is a bona fide exercise of police power or an arbitrary and unreasonable interference with personal rights under the guise of police regulation." Jell-O Co. v. Brown (D. C.) 3 F. Supp. 132, 133.

■ 4. According to the evidence, the plaintiff had an established business at Dodson, one-half mile from the city limits.

The enforcement of the ordinance against the plaintiff has destroyed that business, or will do so, unless the city is enjoined from such enforcement. This would result in depriving it of "property without due process of law," within the first section of the Fourteenth Amendment to the national Constitution.

The city would have no right to do this unless it was essential to protect the residents of the city against imposition. According to the undisputed testimony, the city could, with equal facility, inspect plaintiff's coal at its coalyard as if the coalyard were within the corporate limits of the city. Moreover, the laws of the state of Missouri are salutary and are wholly sufficient to protect the inhabitants of the city against the character of imposition sought to be prevented by the ordinance. It would be a simple matter, furthermore, to check up on plaintiff's deliveries within the city and thereby protect the public against imposition.

To the extent that the ordinance required an established place within the city, it was unreasonable and thus deprived plaintiff of its property without due process of law. Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92.

■ 5. The ordinance also served to deny the plaintiff the equal protection of the law.

It was not within the right of the city to exclude the plaintiff from carrying on its business within the city. The city could subject the plaintiff to reasonable regulations. According to the evidence, other nonresident coal dealers were permitted to distribute coal to the inhabitants of the city without interference. This was a denial of the equal protection of the law, as well as an abridgment of the privileges and immunities of the plaintiff. 12 C. J. § 838, p. 1120.

In the case of Williams v. McCartan et al., 212 F. 345, 347, the District Court for the Western District of New York held invalid an ordinance which required a residence within the city as a condition precedent to employment as a stationary engineer within the city. The court said: "It was not shown that the restrictive residential feature was a necessary expedient to protect the public health, safety, or welfare."

In like manner, in Booth v. Lloyd (C. C.) 33 F. 593, the court held invalid an ordinance which conditioned a residence of twelve months in the state before vessels could be used to buy oysters on the Chesapeake Bay.

The privileges and immunities of nonresidents were sustained in the case of William R. Compton Co. v. Allen (D. C.) 216 F. 537. The numerous authorities supplied by counsel for the parties have been examined and carefully considered. They are in point; and those cited by counsel for plaintiff fully support its contention. The authorities here cited are in addition.

The recent case of Metropolitan Casualty Insurance Co. of New York v. Kenneth V. Brownell, Receiver, 55 S. Ct. 538, 540, 79 L. Ed. ——, decided by the Supreme Court March 18, 1935, is not contrary to the ruling here made.

In that case the court said: "A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it. Rast v. Van Deman & Lewis Co., 240 U. S. 342, 357, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Tax Commission v. Jackson, 283 U. S. 527, 537, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464."

The court then said: "There is no showing that the situation of foreign corporations, writing casualty insurance contracts in Indiana, is so similar to that of domestic corporations as to preclude any rational distinction between them as regards the time required for negotiating settlements of claims and the determination whether suits upon them should be prosecuted within or without the state."

In the case at bar, it affirmatively appeared that there was no reason for the exclusion of outside retail coal dealers, but

that, on the contrary, the inspection facilities were the same as to both inside and outside dealers.

In view of the above, and in view of the ruling of the Court of Appeals, the plaintiff is entitled to an injunction against the city as prayed in its bill. Same should be granted, and will be granted upon the presentation of an appropriate decree.